**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES M. PARKS,** | ) | **CASE NO. 4:07CV3592** |
| | ) | |
| **PETITIONER,** | ) | **JUDGE KATHLEEN M. O'MALLEY** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **DAVID BOBBY, WARDEN** | ) | |
| | ) | |
| **RESPONDENT.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, James M. Parks, ("Parks"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Parks*, Columbiana County Common Pleas Case No. 2003-CR-227.  Parks filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on October 9, 2007, with the United States District Court for the Northern District of Ohio.  On April 17, 2008, Respondent filed his Answer/Return of Writ.  (Doc. No. 14.)  Parks filed a Traverse on May 19, 2008  (Doc. No. 7) and a Supplemental Argument on August 19, 2008.  (Doc. No. 23.) This matter is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2.  For the reasons set forth in detail below, the Magistrate Judge respectfully recommends Park's petition be denied.

## I.  Procedural History

### A.  Conviction

The Columbiana County Grand Jury, by way of secret indictment, charged Parks with engaging in sexual conduct with a victim under the age of 13 in violation of *Ohio Rev. Code* 2907.02(A)(1)(b).  (Resp. Exh. 2.)  Parks was also charged with two specifications: 1) that the victim was less than ten years of age at the time of the offense; and 2) that Parks purposely compelled the victim to submit to the sexual conduct by force or threat of force.  (*Id.*)  A jury found Parks guilty as charged.  (Resp. Exh. 3.)  On March 4, 2004, the court sentenced him to

life imprisonment.[1]  (Resp. Exh. 4.)

### B. Direct Appeal

On March 30, 2004, Parks, through trial counsel (Mark Colluci), filed a timely notice of appeal in the Seventh District Court of Appeals from the Columbiana County judgment of conviction.  (Resp. Exh. 6.)

On February 4, 2005, Parks, through new counsel (Gary Willen and Dick Mount, Jr.) filed a brief, stating the following three assignments of error:

1. The trial court erred in finding the nine year old victim to be competent to testify.

2. The appellant was denied his right to effective assistance of counsel.

3. The trial court erred buy (sic) admitting hearsay statements in violation of the appellant's Sixth Amendment right to confront witnesses.

(Resp. Exh. 8.)

The ineffective assistance of counsel assignment of error dealt with five issues: 1) trial counsel's failure to object to the trial court's finding that the victim was competent to testify; 2) trial counsel's failure to file a motion to suppress the testimony of the victim; 3) trial counsel's failure to cross-examine Mr. Freeman, the state's sole witness to the offense, unrelated to the victim, as to his ability to observe and recount accurately what he had testified to; 4) trial counsel's failure to ask the court to strike from a jury instruction the words "in this case" as it may have led the jury to believe there were other cases pending against Parks; and 5) trial counsel's failure to present evidence to support the defense theory that the state witnesses were biased as outlined in his opening statement to the jury.

The state appellate court consolidated the appeals from the Columbiana and Carroll

---

[1]In a second case, represented by the same attorney, Parks pled guilty in Carroll County to six counts of rape involving the same victim.  (Resp. Exh. 5.)  On March 4, 2004, he was sentenced to a life sentence as to each count with parole eligibility after ten years.  Counts 1, 2, and 3 were ordered to be served consecutive to Counts 4, 5 and 6.  (*Id*.)  Parks appealed this case to the Seventh District Court of Appeals.

In a third case, Parks was charged in Columbiana County with six counts of rape. Represented by different counsel, a jury acquitted him on October 28, 2004.  (Resp. Exh. 34, N-1.)

County cases and, on December 23, 2005, affirmed the judgments.  (Resp. Exh. 10.)

On January 26, 2006, Parks filed a *pro se* notice of appeal to the Ohio Supreme Court from the Columbiana direct appeal judgment.  (Resp. Exhs. 11 and 12.)  Parks restated his three assignments of error as propositions of law.  (Resp. Exh. 12.)

On October 4, 2006, the Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question.  (Resp. Exh. 14.)  There was no further appeal from that judgment.

### C. Application to Reopen Direct Appeal – Ohio App.R. 26(B)

On February 21, 2006, while Parks' direct appeal was pending in the Ohio Supreme Court, he filed in the state appellate court a *pro se* application to reopen his direct appeal of the Columbiana County case.[2]  (Resp. Exh. 15.)  Parks claimed that his trial and appellate counsel were ineffective and raised the following assignments of error:

1) Ineffective assistance of trial counsel for failure to suppress Appellant's statements because he was not properly given his Miranda Rights and Ineffective Assistance of Appellate Counsel for Failure to Raise this Issue on Appeal.

2) Ineffective Assistance of Appellate Counsel for Failure to Raise Issue that Detective Foley deliberately destroyed his notes of his initial interview with Mr. Freeman who was the only witness in this case.  (T. 48) in violation of Jenks Act.

3) Ineffective Assistance of Trial Counsel and Appellate Counsel for Failure to Have trial court give a curative instruction as to the statement made by Detective Walker concerning anal penetration, which was not charged in the indictment. Trial counsel did withdraw his request for an instruction and trial court did not give one.  Also, appellate counsel should have raised this issue on appeal.  Thus, in violation of Appellant's 6th and 14th Amendment rights.  (Tr. 139). Evid. R. 404(b).

4) Ineffective Assistance of Trial Counsel when Counsel Failed to File Pre-Trial Motion for Discovery, and Ineffective Assistance of Appellate Counsel for Not Raising this Issue on Appeal, Thus in Violation of the 6th and 14th Amendments.

5) Ineffective Assistance of Trial Counsel when Counsel had Appellant Removed from the Courtroom to Hold a Competency Hearing on the Nine-Year-Old Victim, and Ineffective Assistance of Appellate Counsel for Not Raising the Confrontation Clause, In Violation of Appellant's 6th and 14th Amendment Rights.

---

[2]Parks also filed an application to reopen his direct appeal in the Carroll County case which the court denied in a written opinion on May 23, 2006.  *State v. Parks*, 2006 WL 4642666, Case No. 04CA803 (7th Dist. Ohio, May 23, 2006).

3

(Resp. Exh. 15.)

On June 20, 2007, and without a response by the State, the state appellate court, in a written opinion, denied the application to reopen.  (Resp. Exhs. 16 and 33.)  On August 2, 2007, Parks filed a *pro se* notice of appeal from this order in the Ohio Supreme Court.  (Resp. Exh. 17-19.)  Parks restated his five assignments of error as five propositions of law.  (Resp. Exh. 19.)  On October 24, 2007, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.  (Resp. Exh. 20.)  There was no further appeal from this judgment.

**D.  *Pro Se* Request for Grand Jury Transcripts**.

On May 8, 2006, while Parks' direct appeal was pending in the Ohio Supreme Court and his application to reopen the direct appeal was pending in the state appellate court, he filed a *pro se* request to obtain grand jury transcripts with the trial court pursuant to *Ohio Crim.R.* 6(E). (Resp. Exh. 21.)  On May 22, 2006, Parks then filed a *pro se* brief claiming that 1) the trial witnesses, including the victim, Detective Walker and Mr. Freeman, testified falsely to the Grand Jury that returned the indictment, and 2) trial counsel was ineffective in not filing a motion for discovery requesting the Grand Jury testimony prior to trial.  (Resp. Exh. 22.)

On June 6, 2006, the trial court denied the request ruling that Parks had not established a "particularized need" to obtain the Grand Jury transcripts.  (Resp. Exhs. 23, 24.)

On July 5, 2006, Parks filed a *pro se* notice of appeal in the state appellate court from the denial of his request for Grand Jury transcripts.  (Resp. Exh. 25.)

On August 30, 2006, prior to any briefing by the parties, the state appellate court ruled that the trial court's judgment was not a final appealable order pursuant to *Ohio Rev. Code* § 2505.02.  (Resp. Exh. 26.)  In its dismissal entry, the appellate court also held that Grand Jury transcripts are only subject to release prior to or during trial pursuant to *Ohio Crim.R.* 6 and, therefore, Parks' post-trial request should be denied.  (*Id*; *see also* Resp. Exh. 27.)

On October 11, 2006, Parks filed a *pro se* notice of appeal in the Ohio Supreme Court from the denial of his request for Grand Jury transcripts.  (Resp. Exh. 28-30.)  Parks presented the following two proposition of laws:

4

1)   Ineffective assistance of counsel because trial counsel never filed a motion for discovery, thus, in violation of Defendant's 5th and 14th Amendment Rights to the United States Constitution.

2)   Testimony given to the Grand Jury was false, and inconsistent to the witnesses' statements at trial, thus Defendant was not fairly indicted by the Grand Jury in violation of Defendant's 5th Amendment to the United States Constitution.

(Resp. Exh. 30.)

On January 24, 2007, the Ohio Supreme Court denied leave to appeal and dismissed the case as not involving any substantial constitutional question.  (Resp. Exh. 32.)  There was no further appeal from this judgment.

### E. Federal Habeas Petition

On November 9, 2007, Parks timely filed the instant *pro se* petition for a writ of habeas corpus presenting three grounds for relief:

Ground for Relief No. 1: Petitioner was denied the effective assistance of trial counsel.
Supporting Facts:
1) Trial counsel failed to object to the trial court's finding that the alleged victim was competent to testify; 2) Trial counsel failed to file a motion to suppress the testimony of the alleged victim; 3) Trial counsel failed to make any argument or objection when the trial court, at the State's request, included the phrase "in this case" to the jury instruction; 4) Trial counsel failed to adequately cross-examine the only witness (Robert Freeman) to the alleged incident regarding his ability to see what had occurred; 5) Trial counsel made claims of various motives for the state's witnesses to be biased toward the petitioner in his opening statement and then presented no testimony, in fact no witnesses at all, to support this defense.

Ground for Relief No. 2: Petitioner was denied his 6th and 14th Amendment rights to the United States Constitution when it admitted hearsay statements in violation of the Confrontational Clause.
Supporting Facts: The trial court allowed hearsay statements of Frank Rudibaugh and Robert Freeman to be introduced into evidence by Detective Walker.  Mr. Rudibaugh's statements included the identification of the alleged victim and the fact that he idolized the petitioner.  Mr. Freeman's statements explained how he was allegedly able to see inside the petitioner's vehicle.

Ground for Relief No. 3: Petitioner was denied the effective assistance of counsel on his first direct appeal.
Supporting Facts: 1) Appeal counsel was ineffective for failing to raise the issue that Sergeant Foley deliberately destroyed his notes of his initial interview with Mr. Freeman who was the only witness in this case in violation of the due process clause of the 14th Amendment; 2) Appeal counsel was ineffective for failing to raise the error that trial counsel was ineffective for failing to have the trial court give a curative instruction as to the statement made by Detective Walker concerning anal penetration,

5

which was not charged in the indictment.  Trial counsel erred by withdrawing his request for a cautionary instruction and the trial court did not give one; 3) Appeal counsel was ineffective for failing to raise the error that trial counsel was ineffective for having petitioner removed from the courtroom to hold a competency hearing on the nine-year-old alleged victim and thus violating petitioner's Sixth Amendment right to confront his accuser.

(Petition, at ¶ 12(A)-(C).)

Respondent acknowledges that all the grounds as stated have been exhausted in state court.

### F. *Pro se* Delayed Petition for Postconviction Relief – R.C. 2953.23

On April 1, 2008, after filing the instant Petition, Parks, *pro se*, filed a delayed petition for postconviction relief in the state trial court.  (Respondent's Exhibit 34.)  In the delayed petition, Parks argued:

1. Petitioner was denied the effective assistance of trial counsel when such counsel failed to adequately conduct a pre-trial investigation and failed to present available defense evidence as he promised during his opening arguments to the jury.

2. Petitioner was denied the effective assistance of trial counsel and the trial court committed an error of law by failing to comply with the requirements of R.C. 2950.09 in finding petitioner to be a sexual predator.

3. Counsel was ineffective for committing numerous violations of the Code of Ethics.

A. A lawyer shall not engage in conduct that is prejudicial to the administration of justice.  [D.R. 1-102(A)(5)].

B. A lawyer shall not engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.  [D.R. 1-102(A)(6)].

C. A lawyer shall not neglect a legal matter entrusted to him.  [D.R. 6-101(A)(3)].

D. A lawyer shall not prejudice or damage his client during the course of professional relationship, except as required under D.R. 7-102(B).

E. A lawyer shall not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.  [D.R. 7-102(A)(1)].

F. A lawyer shall not knowingly make a false statement of law or fact. [D.R. 102(A)].

(*Id.*)

6

On April 25, 2008, the state prosecutor filed a motion for summary judgment.  On May 23, 2008, the common pleas court granted summary judgment and dismissed Park's delayed petition for postconviction relief.[3]

### G. Parks' Motion for Stay and Abeyance

On March 3, 2008, Parks filed a Motion for Stay and Abeyance which is premised on his pursuing and exhausting the claims he presented in his delayed postconviction petition in state court. (Doc. Nos. 10, 16 (renewed request.))  On March 7, 2008, Respondent filed a Notice of Consent to Stay Action.  (Doc. No. 11.)  The Court ordered Respondent to file a brief providing the Court more information prior to ruling on the Stay.  In response, on April 17, 2008, Respondent filed his Return of Writ arguing that the stay as well as the petition should be denied. (Doc. No. 14.)   Subsequently, on May 23, 2008, the Columbiana Common Pleas Court dismissed the delayed postconviction petition.

Parks argued that his federal petition should be stayed pending exhaustion of new claims he raised in the state delayed petition.  He presented three claims to the state court.  The first claim alleged that trial counsel was ineffective in two ways: a) failing to conduct an adequate pretrial investigation, and b) not presenting evidence of witnesses' bias as counsel had promised to do during opening statement.  The second claim concerned a Sixth Amendment violation by trial counsel in advising that Parks should agree to be classified as a sexual predator.  The third claim concerns trial counsel violating numerous ethical and disciplinary rules of conduct.

Parks has not requested to amend his original habeas petition.[4]  Only one of these claims, counsel's failure to present evidence of bias, was raised in his delayed state postconviction petition and is currently before the Court in the instant habeas petition. This subclaim was raised

---

[3]On July 29, 2008, Parks filed a renewed request for re-filing of the May 23, 2008 judgment entry with proof of service.  The prosecutor filed a response to the request on August 4, 2008.  This renewed request is currently pending before the common pleas court.

[4]Parks cannot bring a new ground for relief in this manner.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *United States v. Barrett*, 178 F.3d 34, 46 n. 6 (1st Cir.1999); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir.1997); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994).

by Parks on direct appeal to the Ohio Supreme Court and is already exhausted even though the issue was not addressed in the state appellate court opinion.  *See Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) (*citing Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990) ("The fact that the state court does not address the merits of the claim[] does not preclude a finding of exhaustion.")  Since there is nothing pending before the Court in need of exhaustion, Parks' motion to stay is denied.  (Doc. Nos. 10, 16.)

## II. Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." (*Id.* at 413.)  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." (*Id.*)  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." (*Id.* at 411.)  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. (*Id.* at 410-12.)  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

### III. Merits

#### A. Ground One

In Ground One, Parks raises five subclaims of ineffective assistance of trial counsel:

1) Trial counsel failed to object to the trial court's finding that the alleged victim was competent to testify;

2) Trial counsel failed to file a motion to suppress the testimony of the alleged victim;

3) Trial counsel failed to make any argument or objection when the trial court, at the State's request, included the phrase "in this case" to the jury instruction;

4) Trial counsel failed to adequately cross-examine the only witness (Robert Freeman) to the alleged incident regarding his ability to see what had occurred; and,

5) Trial counsel made claims of various motives for the state's witnesses to be biased toward the petitioner in his opening statement and then presented no testimony, in fact no witnesses at all, to support this defense.

(Doc. 1, Petition.)

#### B. Law

9

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington, 466 U.S. 668 (1984).*  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  (*Id.*)  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Id. at 694.*)  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. (*Id*. at 689); *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Where a petitioner's attorney was an active participant at trial – cross-examining witnesses, making proper objections, and presenting closing argument – the level of representation does not fall below the low threshold required by *U.S. v. Cronic,* 466 U.S. 648 (1984); *Millender v. Adams*, 376 F.3d 520, 524 (6th Cir. 2004).

The court must make an independent judicial evaluation of counsel's performance and not be swayed by the defendant's possible acquiescence to counsel's performance at trial, *Ward v. United States*, 995 F.2d 1317, 1322 (6th Cir. 1993), and must also ensure that counsel acted reasonably under all the circumstances.  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("the relevant question is not whether counsel's choices were strategic, but whether they were reasonable.")

### 1. Analysis of Subclaims 1-4

In the first subclaim, Parks argues that he was prejudiced when defense counsel did not

10

object to the trial court's finding that the victim was competent to testify.  Furthermore, Parks contends he was prejudiced during trial by defense counsel's failure to object when it was apparent that the victim was not competent to testify.   Moreover, Parks alleges that the victim was being coached while testifying by signals from his mother seated in the back of the courtroom.  Parks also contends that the victim was coached by interviewers prior to his testifying in court.

The state appellate court, after a review of the record, concluded that it appeared the victim was competent to testify.  (Resp. Exh. 1, ¶ 22.)  "The record reflects that he was able to differentiate between telling the truth and a lie, and he demonstrated his capability of relaying facts to the jury." (*Id*.)  As to Parks' argument that the victim was coached by interviewers, the state appellate court considered the *Payton* factors[5] in reviewing the competency determination by the trial court and concluded:  "There is nothing before this Court reflecting that the trial court did not consider whether indications of coaching existed in its competency determination." (*Id*. ¶ 29.)  The *Payton* Court does not require a trial court to directly ask questions concerning the possibility of coaching.  (*Id.*)  "Finally, there is no requirement that a trial court explicitly delineate its competency considerations."  (*Id.*)

In Ohio, to determine a child's competency, the court must take into consideration the child's ability to: "1) receive accurate impressions of fact, 2) recollect those impressions or observations, 3) communicate what was observed, 4) understand truth and falsity, and 5) appreciate the responsibility to tell the truth. *State v. Frazier*, 61 Ohio St.3d, 247 (1991)); *see also Payton*, 119 Ohio App.3d 705.  Once a trial court concludes that the threshold requirements have been satisfied, a witness under the age of ten is deemed competent to testify.   (*Id.*)

The determination of whether a child is competent to testify generally rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.  *Frazier*, 61 Ohio St.3d at 251.  "The trial judge, who saw the child and heard his testimony and passed on his competency, was in a better position to judge his competency than

---

[5]*State v. Payton*, 119 Ohio App.3d 694,705 (1997).

is the appellate court, which only read the testimony from the record." *See State v. Bradley*, 42 Ohio St.3d 136 (1989), (*quoting Barnett v. State*, 104 Ohio St. 298, 301 (1922)).  An abuse of discretion connotes an attitude by the trial court that is unreasonable, unconscionable, or arbitrary.  *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

The state appellate court determined that the trial court had not acted inappropriately when it concluded that the victim was competent to testify.  The appellate court found that the victim was able to "differentiate between telling the truth and a lie, and he demonstrated his capability of relaying facts to the jury."  (Resp. Exh. 1, ¶ 22.)  Moreover, Parks cross-examined the victim and he was generally responsive to that cross-examination.  Consequently, Parks' claim that his trial counsel was ineffective for failure to object to the competency determination was overruled.  The Court finds that the state appellate court's conclusion that the victim was competent to testify was constitutionally sufficient.

In the second subclaim, Parks argues that counsel was ineffective in not moving the court to suppress the testimony of the victim on competency grounds.

The state appellate court determined that the appropriate standard to be applied in ascertaining whether counsel is ineffective for failure to file a motion to suppress is the "reasonable probability" standard, that is, "a probability sufficient to undermine confidence in the outcome.  *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, *quoting Strickland* at 694."  (Resp. Exh. 1 at ¶ 32.)

The Sixth Amendment right to effective assistance is not violated by counsel's failure to pursue a motion to suppress unless the motion had merit.  *State v. Ratcliff* (1994), 95 Ohio App.3d 199, 206, 642 N.E.2d 31.  The failure to file a motion to suppress can only be reversible error if it is prejudicial.  Stated another way, is there a reasonable probability that the verdict would have been different had a suppression motion been filed.  *Kimmelman v. Morrison* (1986), 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305. "But, 'failure to file or pursue a motion to suppress, which could possibly have been granted,' and that implicated critical defense issues, constitutes ineffective counsel. [citations omitted]"  *Lallathin v. Lazaroff*, 2006 WL 3257395, Case No. 2:05-cv-1155, *18, (S.D.Ohio, Nov. 9, 2006).

12

The state appellate court reviewed the competency *voir dire* and stated that the victim was able to recall and relay facts and that he appreciated the consequences of lying.  *(Id.* at ¶ 33.) Furthermore, the court stated that the victim was very close to his tenth birthday, the age of competency, as he was nine years old at the time of trial.  *(Id.)*  The court stated that Parks' basis for the motion to suppress appeared to be primarily speculative.  *(Id.)*  Lastly, the state appellate court concluded from the record that there appeared to be "no reasonable basis for filing a suppression motion."  *(Id.)*  Furthermore, as the underlying claim concerning the competency hearing was upheld by the state appellate court, the ineffective assistance claim on this issue is without merit.

In the third subclaim, Parks asserts Freeman's testimony as to what he observed must have been false because photographs taken by appellate counsel demonstrate that Freeman would not have been able to see inside Parks' truck.  (Traverse at 20.)  Parks contends that trial counsel was ineffective by not adequately cross-examining Freeman as to his ability to observe.

The state appellate court summarized the state's direct examination of Robert Freeman as follows:

> Freeman testified that he was driving his own truck on the day in question. He coasted toward Appellant's trespassing truck after spotting it trespassing on property under his care. Freeman suspected that Appellant was illegally dumping on Freeman's landlord's property. Freeman's vehicle was more elevated than Appellant's truck since it was on a hill. Upon approaching the driver's side of the truck, Freeman saw a blond head in the driver's lap through the driver's side window. The child's head popped up as Freeman approached and Freeman realized it was a seven or eight-year old boy. The driver had his pants down. When the driver saw Freeman, he pulled up his pants and hit his truck's accelerator. (Tr., pp. 160-164.)

(Resp. Exh. 1, ¶ 35.)

The Court of Appeals concluded:

> Contrary to Appellant's assertion on appeal, Appellant's trial counsel did ask Freeman about specific things he was or was not able to see inside the truck that day. Specifically, his counsel asked Freeman if he saw whether Appellant's underwear were pulled down. Freeman could not say for certain whether Appellant had his underwear pulled down or whether he was even wearing underwear that day. Freeman also testified that he could not tell, "what was around his ankle because the door was obstructing that view that far down." (Tr., p. 175.) Freeman was certain that Appellant's pants were around his knees. In

13

> addition, Appellant's counsel then established that Freeman did not have a view of the entire interior of the truck's cab and that Freeman did not actually see Appellant's penis in the boy's mouth. (Tr., p. 178.)

(Resp. Exh. 1, ¶37.)

The state appellate court concluded that Parks' trial attorney adequately questioned Freeman's ability to see the incident in question, and, therefore, Parks has not established ineffective assistance of counsel as to this allegation.  (*Id.* ¶ 38.)

In the fourth subclaim, Parks contends that a jury instruction contained the phrase "in this case." Parks states that the trial court acknowledged that this could leave an impression on the jury that Parks had other cases pending against him. Parks claims, relying on *Girts v. Yanai*, 501 F.3d 743, 757 (6th Cir. 2007) that he only needs to show ". . . there is a strong likelihood that at least one juror would have changed his mind if the [error] would not have been made, especially because the prosecutor presented weak and limited evidence at trial." (*Id.*)

It is clear from the record that this phrase was given as part of a curative instruction.  The request for the curative instruction was due to Detective Walker's comment on anal penetration during his testimony.[6]  After this testimony was elicited, defense counsel requested a mistrial,

---

[6]On cross-examination, Detective Walker testified as follows:

Q     And then you do the lineup.  You didn't suspect anybody else.  It had to be on that date, at that time, that's what's happening.  And yet you can't show me in Mr. Freeman's statement where he talks about screaming out for help or anything like that.  And this is after a month he had to fix it up and beef it up.  Freeman doesn't say that and he was there.  Why isn't that in there?  Doesn't that cause you pause as to what Arbogast is trying to tell you?

A     No, I believe that when he was arguing - or when he was saying that he was screaming for help, I believe that was when he was in pain due to the anal penetration.

Q     Well, in this case that's not what it's about, is it?

A.     No.

Q     That's not what this case is about.

　　　　　MR. COLLUCCI: And, your Honor, I would like to approach the bench out of the premise of the jury.

(Resp. Exh. 35 at 139.)

which the court denied.  Defense counsel then requested a curative instruction.  The trial court added language to a standard jury instruction as to the specific type of sexual conduct that was charged.  The instruction stated:

> Sexual conduct means and includes fellatio, which is a sexual act committed with the penis and the mouth.  Sexual conduct, under the law of Ohio, includes several different types of sexual acts.  However, this case involves one and only one type, that of fellatio.  This Defendant is accused of none other in this case and therefore, no other type of sexual conduct shall be considered by you.

(Resp. Exh. 36 at 333-334.)

The trial court stated that this additional language was in accord with the Bill of Particulars.  *Id.* at 289.  Defense counsel later withdrew his request for a curative instruction indicating that the additional language in the jury instruction adequately addressed his concerns.  (Resp. Exh. 36 at 290.)  The prosecution then asked the court to insert the words "in this case" to the instruction.  (*Id.* at 292.)  Defense counsel did not object.

The state appellate court concluded that in light of this exchange, trial counsel was not deficient, but even if it assumed he was deficient, when reading the jury instructions as a whole, counsel's error was not "so serious to deprive [Parks] of a fair trial."  (*Id.*  ¶¶ 41-42.)  Moreover, the court stated that [w]hile the words "in this case" could be construed in the manner argued by Appellant, this construction was probably not apparent to the jury since it is not apparent in the context to any casual reader."  (*Id.* at ¶ 41.)

In order to warrant habeas relief, a petitioner must demonstrate that the jury instructions were both erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991), *citing Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The category of infractions that violate "fundamental fairness" is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights.  (*Id.*)  "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly."  *Whalen v. Trippett*, 2000 U.S. App. LEXIS 16216 at *7 (6th Cir. 2000), *citing Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998).

15

Parks has not demonstrated that he was prejudiced by the inclusion of "in this case" in the jury instruction.  The state appellate court's conclusion was not an objectively unreasonable application of federal law to this claim.

As to subclaims 1-4, Parks has not demonstrated prejudice or that trial counsel was "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *See U.S. v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).  Therefore, this Court finds that the state appellate court adjudication of these subclaims was neither contrary to nor an unreasonable application of federal law.  Petitioner's ineffective trial counsel subclaims 1 through 4 are without merit.


**2.  Analysis of Subclaim 5**

In Subclaim 5, Parks suggests that trial counsel was ineffective when he made comments in his opening statement to the jury regarding improper motives of prosecution witnesses, and then did not put on evidence of those motives during trial.  Parks presented this issue to the state appellate court, however, the court did not address it.  Therefore, this Court will review the claim *de novo*.  *See Wiggins v. Smith*, 539 U.S. 510, 534-38 (2003).

In his opening statement, Parks' attorney attempted to explain the defense theory that Parks was innocent and that the jury should question the credibility of the prosecution witnesses.  Furthermore, he stated that everyone connected to the case was out to falsely accuse and convict Parks of the offenses.  Specifically, defense counsel stated: "You'll see a story unfold of revenge, marriages, divorce, prior court cases, all the motives in the world aimed at killing this man."  (Exh. 35, at Tr. 23:10 to 25:5.)

Parks argues that the lack of witnesses to testify as to a "story unfold[ing] of revenge, marriages, divorce. . ." severely prejudiced him because it allowed the prosecutor to ask the jury in closing argument whether they heard such evidence or testimony.  During the prosecutor's second closing statement, he again reminded the jury that they were not presented with any evidence to prove such a conspiracy.   Parks contends that this failure to deliver a promised defense had a prejudicial impact and a "substantial and injurious effect" upon the verdict.

Respondent argues that in addressing the prejudice prong of *Strickland*, ineffective

16

assistance of counsel claims must be viewed in the context of the totality of the evidence presented at trial.  Freeman, the sole witness to the incident, told police that he observed Parks' truck in a field, and from his position that was elevated from that of Parks' vehicle, he observed Parks in the drivers' seat with his pants pulled down.  He then observed a child's blond-haired head pop up from Parks' lap.  (Resp. Exh. 35 at 156-180.)  Upon being noticed, Parks pulled up his pants and drove off by "flooring" the accelerator.  (*Id*.)  Freeman reported this activity to Det. Walker and gave a description of the truck.  Later, he identified Parks in a photo lineup.  (*Id*. at 30-32.)

According to Det. Walker's testimony, Parks gave a voluntary statement that was at odds with Freeman's testimony.  (*Id*. at 67-76.)  Initially, Parks told Det. Walker that he parked in the field with his three-year old daughter.  (*Id*. at 71.)  When Parks was asked about his pants being down, he responded: "Sometimes I don't wear a belt and my pants fall down. [My daughter] may have been laying across the seat.  I didn't do what he is insinuating."  (*Id*. at 72.)  Parks later changed his story, saying that he was in the field, his three-year old daughter was sleeping in the truck, he exited the truck to urinate, and, while standing in the doorway of the truck, he noticed Freeman.  Parks pulled up his pants when Freeman approached, got back into the truck, and drove off.  (*Id*. at 74.)

Other evidence included testimony of Sharon Arbogast, the girlfriend of the victim's father, who said that when the victim initially began telling her that Parks had done improper things to him, Detective Walker was immediately called and asked to come to the house.  (*Id*. at 186-87.) The victim testified that Parks forced him to perform oral sex.  (Resp. Exh. 36 at 231.)

Respondent asserts that Parks does not demonstrate prejudice as the remarks of counsel could not form the basis for a conviction.  The jury was specifically instructed that Parks must be acquitted unless "the State produces evidence, which convinces you beyond a reasonable doubt of every essential element of the offense charged in the indictment," and that opening statements, while designed to assist the jury, are not evidence.  (Exh. 36, at Tr. 328:24 to 329:3 and 330:19-25.)

Furthermore, as Respondent points out, defense counsel cross-examined and re-cross

17

examined the critical State witnesses as to "their involvement in the reporting and investigating of the offenses and the witnesses' perceived failures and shortcomings, what was normal procedure, what was done by the witnesses in their role in the case, and what was not done by the witnesses." (Resp. Return of Writ, page 32.)  In particular, the child was cross-examined by the defense on the theory that others had manipulated him into falsely prosecuting Parks in an effort to send him to jail. (Exh. 36, at Tr. 250: 18-22, 251:6 to 253:3, 254:5-8, 255:19-23, 256:16 to 257:6, 257:20 to 259:13, 261:7 to 262:3.)  On re-direct examination, the victim testified that no one told him what to say or to "make something up," which contradicted his cross-examination that others had told him what to say.  (*Id.* at Tr. 264:1-8.)  Finally, on re-cross examination, the victim again testified that others had told him what to say.  (*Id.* at Tr. 272:1 to 273:8).  It is clear that the defense theory was to impugn the witnesses' credibility in the eyes of the jury.  Defense counsel put forward this theory with each witness.  In closing argument, defense counsel reinforced the theory that Parks was falsely charged by others who manipulated the victim's testimony.  (*Id.* at Tr. 314:12 to 324:2.)  The jury was free to weigh the conflicting evidence and assess the credibility of the witnesses.

Upon reviewing the record, Parks has not established that trial counsel's performance was deficient or, assuming that it was, that he was prejudiced therefrom.  Subclaim 5 is also without merit.

### C.  Ground Two - Confrontation Clause/Hearsay

In Parks' Traverse, he concedes that this claim is without merit.  (Parks Traverse at 26.)

### D.  Ground Three - Ineffective Assistance of Appellate Counsel Claims

Parks claims that appellate counsel was ineffective in three respects:

1) failing to raise the issue that Sergeant Foley deliberately destroyed his notes of his initial interview with Mr. Freeman, the sole witness in the case, which was a violation of Parks' due process rights;

2) failing to raise the error that trial counsel was ineffective for failing to have the trial court give a curative instruction as to the statement made by Detective Walker concerning anal penetration, which was not charged in the indictment. (Parks alleges that trial counsel erred by withdrawing his request for a cautionary instruction and the trial court did not give one); and

3) failing to raise the error that trial counsel was ineffective for having Parks removed from the courtroom to hold a competency hearing on the nine-year old alleged victim and thus violating Park's Sixth Amendment right.

In order to determine whether counsel's performance was ineffective, a petitioner must first show serious deficiencies in counsel's performance.  Second, the defendant must show that counsel's deficient performance resulted in prejudice that was, "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. 668, 687.  The right to the effective assistance of counsel includes appellate counsel as well as trial counsel.  In *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999), the Court, with reference to the first prong of *Strickland*, listed eleven questions as matters to be considered in determining whether an attorney on direct appeal acted in accordance with the objective standard of reasonableness.[7]

In subclaim 1, Parks contends that appellate counsel was ineffective in failing to raise the issue that Sergeant Foley deliberately destroyed the notes of his initial interview with Mr. Freeman.

The state appellate court, in Parks' application to reopen, addressed this issue and concluded that trial counsel was permitted to fully cross-examine Sgt. Foley regarding his telephone interview with Mr. Freeman.  (Resp. Exh. 33, ¶¶ 23, 24.)  Foley jotted down points on his calendar as a "preliminary note" and testified that "is usually the way it goes in the report."

---

[7]Those questions are as follows:  (1) Were the omitted issues "significant and obvious"? (2) Was there arguably contrary authority on the omitted issues?  (3) Were the omitted issues clearly stronger than those presented?  (4) Were the omitted issues objected to at trial?  (5) Were the trial court's rulings subject to deference on appeal?  (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?  (7) What was appellate counsel's level of experience and expertise?  (8) Did the petitioner and appellate counsel meet and go over possible issues?  (9) Is there evidence that counsel reviewed all the facts?  (10) Were the omitted issues dealt with in other assignments of error?  (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 171 F.3d at 427-28.

19

(Resp. Exh. 35 at 37-38.)  Foley had his report with him at trial.  Moreover, trial counsel also had the opportunity to cross-examine Mr. Freeman.  (*Id*. at. 173-178, 180.)  The state appellate court concluded that for these reasons Parks had no reasonable probability of success had appellate counsel presented these arguments in the initial appeal.

The failure to preserve potentially useful evidence violates due process only if the defendant shows that the police acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). This requires that the exculpatory value of the evidence be apparent and that the police know of it before they destroy the item.  *(Id*. at 56.)  The defendant must also show that the destroyed items were material.  (*Id*.)  There is no absolute duty to retain and preserve all items that might be of conceivable evidentiary value.  *Arizona v. Youngblood*, 488 U.S. at 58.  The destruction of rough interview notes does not automatically entitle a defendant to relief.  *Cf. Killian v. United States*, 368 U.S. 231, 240-242 (1961) (FBI agents destroyed interview notes after the information in those notes had been incorporated into police reports).

Sgt. Foley's failure to retain his preliminary notes caused no prejudice to Parks.  The state appellate court's decision as to the preliminary notes was not contrary to or an unreasonable application of federal law.

In subclaim 2, Parks asserts that his appellate counsel was ineffective for failing to raise trial counsel's error of withdrawing a request for a curative instruction as to a statement made by Detective Walker concerning anal penetration.  On cross-examination Det. Walker testified about "anal penetration."  (*Id*. at 139.) (*See, supra*, footnote 5.)  On re-direct, the prosecution immediately attempted to focus the jury's attention that the case was not about "anal penetration."  (*Id*.)

The state appellate court, on the application to reopen, addressed this issue and stated:

A review of the trial transcript does not depict that Appellant's trial counsel intended or anticipated that he would elicit any response about anal penetration. Based on the extensive record in this matter, it does not appear that, but for the questioning, Appellant would not have been convicted. In addition, the questioning at issue appears to be a matter best described as a trial tactic (despite the unanticipated result) and trial tactics are left to the discretion of the attorney and will not be second-guessed by a court of review. Appellant's counsel on appeal had no real probability of success had he raised these claims as an issue on appeal. Thus, Appellant's argument fails on this issue.

20

(Resp. Exh. 33, ¶ 38.)

Parks argues that he is only required to show a strong likelihood that one juror may have decided to convict due to the reference to anal sex that unexpectedly came before the jury.

Upon reviewing the trial record, this Court notes that defense counsel immediately asked the Court to approach the bench "out of the premise of the jury." (*Id.* at 139.) After the jury was excused from the courtroom, defense counsel moved for a mistrial stating that a curative instruction would not alleviate the impact of the witness' answer as to anal intercourse. The state agreed to a mistrial. (*Id.* at 143.) Colloquy between the attorneys and the Court mentioned a motion *in limine*.[8] The court ultimately denied the request for a mistrial. *(Id.)* Defense counsel subsequently asked for a curative instruction. The Court did not give an immediate curative instruction (*Id.* at 147), but later, in its jury charge, it defined the type of sexual conduct at issue. The jury instruction specifically stated that the sexual conduct the defendant was charged with involved fellatio and that the jury should not consider any other type. (*See, supra* page 14 for jury instruction.) Defense counsel withdrew his request for a curative instruction after being satisfied with the court's action.

The jury instruction as given was satisfactory to both the state and Park's counsel. The failure to give further instructions did not render the trial unfair. The state court of appeals, in its denial of Parks' motion to reopen, found no reasonable probability of success had appellate counsel raised this issue. Parks' trial counsel strategically decided to withdraw his request for a curative instruction, as the jury instruction specifically addressed the issue. Thus, there was no reason for appellate counsel to raise ineffective assistance of counsel on this claim.

As to subclaim 3, Parks contends that he should have been present at the competency hearing. The state appellate court, ruling on the motion to reopen, concluded that appellate counsel was not ineffective for failing to raise this issue on direct appeal. During the competency hearing, the child was asked appropriate questions and gave answers indicating that

---

[8]According to the court docket, a motion *in limine* was filed by defense counsel on February 3, 2004, the first day of trial. (Resp. Exh. 21.) The docket gives no more information and the motion *in limine* was not part of the record provided to the court.

21

he was able to differentiate between telling the truth and a lie. He stated it is important to tell the truth "because people will get in trouble." (Resp. Exh. 33, ¶ 50.) Also, he indicated that he was prepared to tell the truth. (*Id*.) Both attorneys were given an opportunity to ask questions of the victim at the competency hearing, but did not do so. (*Id*.) Also, defense counsel made no objection as to the ruling.[9] (*Id*). In the concurring opinion, the court explained:

> In *Stincer*, the Court specifically held that a defendant's rights under the Confrontation Clause are not violated by his exclusion from a competency hearing because his exclusion from that hearing does not interfere with his opportunity for effective cross-examination at trial. *Id.* at 736-744. In reaching this conclusion, the Court noted that in Kentucky (as is the case in Ohio), it is the responsibility of the judge, not the jury, to determine a witnesses' competency to testify; moreover that responsibility continues throughout the trial. *Id.* at 742, 743. Thus, defendant's counsel could question the witnesses regarding their competency at trial, in the defendant's presence, to not only undermine their credibility, but to explore their competency again and move the trial court to reconsider its ruling regarding the witnesses' competence if counsel deems is warranted. *Id.* Thus, a defendant's constitutional right to confront the witnesses against him is preserved.
>
> Clearly, appellate counsel cannot be ineffective for failing to make an argument the United States Supreme Court held meritless twenty years ago and this cannot form a basis for reopening this appeal.

(Resp. Exh. 33, concurring opinion, ¶¶ 57, 58)

As the appellate court noted, counsel was afforded the opportunity to confront the victim during the competency hearing, and the defense, with Parks present, had the opportunity to cross-examine the victim at trial. *See Maryland v. Craig*, 497 U.S. 836, 849 (1990)(face-to-face confrontation with witnesses is not an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers).

The Court finds that the state appellate court adjudication was neither contrary to nor an unreasonable application of federal law as to these three subclaims. Therefore, his ineffective appellate counsel claims are without merit.

### IV. Other Motions

Parks also filed various motions for discovery which were ruled on by the undersigned in

---

[9]The Court did not find this to be ineffective assistance of trial counsel. (See Ground 1, Subclaim 1, pages 10-12.)

an order dated July 11, 2008. (*See* Doc. No. 18.) On August 18, 2008[10], after receiving copies of sealed state court exhibits, including the competency hearing transcript and two statements of the victim dated June 13, 2003 and June 25, 2003, Parks filed a supplemental argument. Therein he argues that his counsel failed to exploit at trial the inconsistencies between the two statements of the victim and his testimony. Parks claims that this issue is related to Ground One, subclaim 5 of his Petition. (See Supplemental Argument, page 4.) However, that subclaim deals with the ineffectiveness of trial counsel in failing to show the bias of the State's witnesses. Parks cannot bring a new ground for relief in this manner. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005); *United States v. Barrett*, 178 F.3d 34, 46 n. 6 (1st Cir.1999); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir.1997); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994).

Nonetheless, the Court will consider Park's argument that defense counsel should have exposed the inconsistent statements to the jury.

In the case at bar, the trial court reviewed the grand jury testimony of the victim along with transcripts of his two statements. The court stated on the record that the Grand Jury testimony was consistent with one or both of the statements. Therefore, the court did not allow defense counsel to review the grand jury testimony. (Resp. Exh. 36 at 235-242.) The court did allow him to review the two previous statements of the victim. (*Id*.) Defense counsel then argued to the court that there was an inconsistency between the statements and the victim's testimony in court. The court gave defense counsel an opportunity to question the victim as to the inconsistent statements. In the end, however, trial counsel elected to examine the victim heavily on the issue of whether he had been coached as to his testimony, rather than use the inconsistent prior statements.

Trial counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir 1994). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

---

[10]According to the docket report, Parks' supplemental argument was filed and entered on the docket on August 19, 2008, although the document is time-stamped on August 18, 2008.

23

judgment." *Strickland*, 466 U.S. at 690.  Petitioner must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id*. at 688-689.  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.  *Id*. at 689.  Where a petitioner's attorney was an active participant at trial – cross-examining witnesses, making proper objections, and presenting closing argument – the level of representation does not fall below the low threshold required by *U.S. v. Cronic,* 466 U.S. 648 (1984); *Millender v. Adams*, 376 F.3d 520, 524 (6th Cir. 2004).

As to defense counsel's examination of the victim, counsel acknowledged to the court the fact of the inconsistent statements but chose not to cross-examine the victim as to his prior statements.  Moreover, defense counsel was an active participant at trial.  He cross-examined and re-cross examined witnesses and made proper objections.  He consistently pursued the theory that the child was coached.  Parks has not rebutted the presumption as to the use of the prior statements that all significant decisions were made in the exercise of reasonable professional judgment.  Therefore, he has failed to establish ineffective assistance of counsel.

Parks also requests the grand jury testimony of the victim (and others) because he contends it "will show favorable evidence."

In *Brown v. Sheets*, 2007 WL 3024456, Case No. 2:06-cv-448, *15-16 (S.D. Ohio, Oct. 15, 2007), the Court set out the law as to disclosure of grand jury testimony as follows:

> Grand jury proceedings are subject to a general rule of secrecy and may not ordinarily be disclosed.  *Garrett v. Moore*, 2007 WL 315093 (S.D.Ohio January 30, 2007) *citing Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958); *see also United States v. Hayes*, 376 F.Supp.2d 736, 739 (E.D.Mich. May 27, 2005).
>
> The decision whether to disclose grand jury testimony ... is entrusted to the discretion of the court. *United States v. Short*, *supra*, 671 F.2d at 184. However, that discretion is not absolute, id., and before disclosure is ordered, the defendant must show a "compelling necessity" for breaking the "indispensible secrecy of grand jury proceedings." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Short, supra*, at 184. A compelling necessity is shown by demonstrating a "particularized need" for the disclosure. *Procter & Gamble* at 683, 78 S.Ct. 983.  *Id.*

*Brown v. Sheets*, 2007 WL 3024456, Case No. 2:06-cv-448, *15-16 (S.D. Ohio, Oct. 15, 2007).

24

Parks fails to attach his request to any claim presently pending before the Court in this habeas action.  He merely speculates that it may show favorable evidence.  Therefore, he has neither shown relevance nor a particularized need as required by the law.  The Court hereby denies his renewed request for grand jury transcripts.

### V.  Evidentiary Hearing

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing."  *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir.2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir.1994) (citation and internal quotation omitted)).  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit.  (*Id.*)

In this case, upon review of the pleadings and transcripts, the procedural issues presented can be resolved from the record.  An evidentiary hearing is, therefore, not required.

### VI.  Conclusion

The undersigned hereby denies Parks' motion for stay (Doc. Nos. 10, 16.) and his renewed motion for grand jury transcripts.  (Doc. No. 23.)

For the foregoing reasons, the Magistrate Judge recommends Parks' petition be DENIED.


_____s/ Greg White_____
United States Magistrate Judge

Date:   October 1, 2008


### OBJECTIONS
**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**